UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BYRON DOZIER ET AL** | **CASE NO. 6:22-CV-00114** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **GENESEE & WYOMING RAILROAD SERVICES INC ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

The present matters before the Court are two motions: (1) the Motion for Summary Judgment filed by defendants, Genesee & Wyoming Railroad Services, Inc. ("GRSI") and Louisiana & Delta Railroad, Inc. ("LDRR") [ECF No. 75]; and (2) the Motion for Summary Judgment filed by GRSI on whether it is a FELA employer [ECF. No. 77]. Plaintiffs Byron Dozier and Bruce Alexander ("Plaintiffs") oppose the motions. [ECF Nos. 82, 84]. After considering the Motions, the summary judgment record, and the relevant authorities, the Court rules as follows.

## I.
### BACKGROUND

Plaintiffs Byron Dozier and Bruce Alexander bring this personal injury action under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, et seq. Plaintiffs were employed by LDRR as conductors for the railroad. On December 8, 2020, Plaintiffs were traveling on the train through Baldwin, Louisiana. Trains regularly stopped at a depot in Baldwin to switch railcars. On December 8th, Plaintiffs exited the locomotive in Baldwin, and engaged "switches to allow for the train to switch tracks from the BNSF mainline track and enter the LDRR Yard."[1] Shortly after switching tracks Alexander heard a heated argument and then heard gunshots.[2] Alexander was

---

[1] ECF No. 43 at 10.
[2] *Id.* at 11-12.

struck in the right shin by a gunshot.[3] Dozier was not struck by gunfire but, once realizing that the sounds he heard was gunfire, "fell into a pus-up position to avoid being shot."[4] He eventually "ended up down the ballast slope and into the adjacent ditch" by the rail right of way.[5] Both Plaintiffs claim injuries as a result of the shooting. Although Dozier was not struck by gunfire, he alleges injuries that prevented him from returning to work. Defendants subsequently filed the present two motions for summary judgment.

## II.
## THE SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[6] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[8] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[9]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and

---

[3] *Id.* at 11-12.
[4] *Id.* at 11-12.
[5] *Id.* at 11-12.
[6] Fed. R. Civ. P. 56(a).
[7] *Id.*
[8] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[9] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[10] "Credibility determinations are not part of the summary judgment analysis."[11] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[12]

Under FELA, awarding summary judgment to the defendant railroad is appropriate "[o]nly when there is a complete absence of probative facts" to support a jury verdict in the plaintiff's favor.[13] "This standard is highly favorable to the plaintiff and recognizes that the FELA is protective of the plaintiff's right to a jury trial."[14] Indeed, courts have held that "the plaintiff's burden of proof [in a FELA case] is 'featherweight' and 'our precedents clearly establish that in this Circuit, a judgment as a matter of law against the plaintiff ... is appropriate 'only when there is a complete absence of probative facts' supporting the plaintiff's position.'"[15]

### III.
### MOTION FOR SUMMARY JUDGEMENT ON FORESEEABILITY

FELA provides the exclusive remedy for a railroad employee engaged in interstate commerce whose injury resulted from the negligence of the railroad.[16] Under FELA, an injured railroad employee may recover damages for "injury or death resulting in whole or in part from the

---

[10] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[11] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[12] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[13] *Lavender v. Kurn*, 327 U.S. 645, 653 (1946).
[14] *Wooden v. Mo. Pac. R.R. Co.*, 862 F.2d 560, 561 (5th Cir. 1989) (punctuation edited)
[15] *Howard v. Canadian Nat'l/Ill. Cent. R.R.*, 233 F. App'x 356, 357 (5th Cir. 2007) (quoting *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004)).
[16] *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004).

negligence" of the railroad.[17] A FELA plaintiff bears the burden of proving "all the same elements as are found in a common law negligence action," including foreseeability.[18] FELA's language on causation, however, "is as broad as could be framed," and reflects "a relaxed standard of causation."[19] A plaintiff may recover under FELA if the evidence before the jury supports "with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."[20] Under this standard, the plaintiff must show that the harm suffered by the plaintiff was "reasonably foreseeable."[21]

Here, defendants argue that the injuries caused by stray bullets from a gunfight between third parties occurring on an adjacent public street was not reasonably foreseeable. They argue that even if the area surrounding Plaintiffs' worksite was considered a "high crime" area, this evidence is too general to support a finding that the specific shooting at issue here was reasonably foreseeable. They argue that the specific incidents of third-party crime cited by Plaintiffs are dissimilar to the shooting that injured Plaintiffs or, even if similar, occurred in different locations from Plaintiffs' worksite.

Plaintiffs, however, point to evidence in the summary judgment record that they contend shows that their injuries were reasonably foreseeable. Specifically,

- "Baldwin PD Officer Joseph Garrison testified that he personally heard gunshots coming from the same direction as the December 8, 2020 shooting on Railroad Ave. every couple of months or so before the incident and that it happened 'often.'"[22]

- "Officer Garrison and Chief Smith with Baldwin PD testified that the area where the shooting occurred on Railroad Ave. was a high crime area and a 'hotspot' for criminal activity in the two-year period preceding the date of the incident."[23]

---

[17] 45 U.S.C. § 51, et seq.
[18] *Armstrong v. Kansas City S. Ry. Co.*, 752 F.2d 1110, 1113 (5th Cir. 1985).
[19] *Urie v. Thompson,* 337 U.S. 163, 181 (1949); *Gottshall,* 512 U.S., at 542–543.
[20] *CSX Transp., Inc., v. McBride*, 564 U.S. 685, 692 (2011).
[21] *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 117 (1963).
[22] ECF No. 82 at (citing ECF No. 43 at 14, 15 and Garrison Deposition Transcript).
[23] *Id.*

- "St. Mary Parish Sheriff's Office records show that the two years preceding December 8, 2020 saw 67 documented gun-related incidents in the two-mile radius around the Baldwin Yard adjacent to Railroad Ave. where Byron and Bruce were working at the time of the shooting, including a 'cluster' of 11 confirmed shootings and gunshot calls to the St. Mary Parish Sheriff's Office in the two-month period immediately preceding the December 8 shooting."[24]

- "Defendants through manager Faulk made frequent security inspections of the nearby Baldwin Depot where employees come on and off duty (less than a half mile from the shooting) and the 'area around the depot,' suggesting there was a concern with third-party criminality impacting work areas."[25]

- "Defendants knew about a major drug raid, involving ATF and local law enforcement, that happened a mere three (3) blocks from the shooting incident and on the same road – the notoriously dangerous Railroad Ave."[26]

- "Defendants knew the Baldwin Depot had been broken into and robbed the year before."[27]

- "Keith Mitchell, the engineer on the night of the Dec. 8, 2020 shooting, confirmed the area in Baldwin where they worked – including Railroad Ave. – was 'known to be dangerous' and specifically had a reputation as a place 'known for shootings.'"[28]

- "Mitchell was personally told by Baldwin-based employees John Breaux and Jared Savoy in March 2019 that the area in Baldwin where they operated was dangerous, that 'they shoot around here,' that 'they shot a lot in the area,' that gunshots could be heard, and 'to be careful of the shooting.'"[29]

- "Mr. Mitchell also testified that those same employees reported the dangerous condition – that the area was unsafe – to managers Dustin Faulk and Marvin Wingfield before the December 8, 2020 shooting."[30]

- "Jarod Savoy testified to personally hearing gunshots on multiple occasions at night while working at the Baldwin Yard near Rosebud Street and Railroad Ave. (the location of the Dec. 8 2020 shooting) and the Baldwin Depot, and he relayed that information to coworkers to let them know 'to kind of watch out and be aware,' supporting the consensus that the area was unsafe."[31]

---

[24] *Id.* (citing Frazier and Garrison Deposition Transcripts).
[25] *Id.*
[26] *Id.* (citing Mitchell and Breaux Deposition Transcripts).
[27] *Id.*
[28] *Id.* (citing Mitchell Deposition Transcript).
[29] *Id.* (citing Mitchell Deposition Transcript).
[30] *Id.* (citing Mitchell Deposition Transcript).
[31] ECF No. 80-5 Savoy Deposition Transcript.

- "John Breaux further testified it is possible he reported this to supervisors Dustin Faulk and Marvin Wingfield, and that these supervisors would have known about this activity since they worked in Baldwin before Breaux for 10 or 15 years, '[s]o, you know, it's not like this would have been something new to them[.]'"[32]

Defendants argue that this evidence does not support a finding that Plaintiffs' injuries were reasonably foreseeable. Defendants argue that the prior incidents of criminal activity did not occur in close proximity to the area where Plaintiffs were working, or that this criminal activity was not similar to the gunfight that injured Plaintiffs. They also question whether the evidence supports any inference that Plaintiffs' supervisors or managers were aware of criminal activity in the area. Indeed, Defendants question whether the area around Plaintiffs' worksite was actually a "hot-spot" for criminal activity.

The Court agrees with Defendants that even if Plaintiffs' worksite was located in a "high crime" area of Baldwin, this evidence alone is not sufficient to create a triable issue on reasonable foreseeability. Nor is evidence of dissimilar criminal activity—such as drug crimes, vandalization, and burglary—occurring in the surrounding Baldwin area. Plaintiffs, however, point to evidence of a pattern of gun violence in close proximity to the worksite where Plaintiffs were injured. They also point to evidence from which a reasonable juror could infer that Defendants knew or should have known that gunfire had occurred in the past in close proximity to the worksite. While Defendants challenge some of this evidence and point to conflicting evidence with respect to foreseeability, the evidence in the record cuts both ways. A jury may ultimately conclude that Plaintiffs have not established reasonable foreseeability by a preponderance of the evidence. But

---

[32] ECF No. 80-4, John Breaux Deposition Transcript.

the summary judgment record reveals triable issues on foreseeability that should be decided by a jury.[33]

Defendants next argue that, even if Plaintiffs' injuries were reasonably foreseeable, there "were no reasonable precautions that could have prevented this incident."[34] Defendants argue that this case is distinguishable from cases where courts found a railroad liable for the criminal acts of third parties because the gunfight at issue here occurred on adjacent public streets, not the railroad's property, and did not target railroad employees. Defendants argue that, in the cases cited by Plaintiffs, third-party trespassers caused harm to railroad employees on railroad property. Quoting from a Seventh Circuit case, Defendants contend that FELA "does not require the railroad to provide precautions that are impossible to defeat" and that it would be impossible to prevent random gunfire occurring off the railroad's property.[35] Plaintiffs, however, point to evidence that the area surrounding Plaintiff's worksite was not properly lit and that Defendants provided inadequate security. Defendants also point to countervailing evidence suggesting that these measures would not have prevented Plaintiffs' injuries. Again, the evidence cuts both ways and presents a genuine issue of material fact for the jury to resolve. Accordingly, the motion for summary judgment is denied.

## IV.
### GRSI'S MOTION FOR SUMMARY JUDGMENT ON EMPLOYMENT RELATIONSHIP

Defendant GRSI filed a separate motion for summary judgment arguing that, as a matter of law, Dozier and Alexander were not GRSI employees but were instead employed solely by

---

[33] "[The jury] weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Gallick*, 372 U.S. at 115.
[34] ECF 36-1 at 2.
[35] ECF No. 36-3 at 21 (quoting *Reardon v. Peoria and Pekin Union Railway Co.*, 26 F.3d 52, 55 (7th Cir. 1994)).

LDRR.[36] A claim under FELA requires proof of an employee-employer relationship between the plaintiff and the defendant.[37] Here, Dozier and Alexander were formally employed by defendant LDRR. However, for FELA purposes, "employment" describes a master-servant relationship "determined by reference to common-law principles."[38] Under the common law, a plaintiff can establish employment with a railroad carrier even while nominally employed by another in three ways: (1) "the employee could be serving as the borrowed servant of the railroad at the time of his injury," (2) "he could be deemed to be acting for two masters simultaneously," and (3) "he could be a subservant of a company that was in turn a servant of the railroad."[39]

The summary judgment record does not support the "borrowed" servant theory in this case. With respect to the dual servant and subservant theories, the record cuts both ways. If the railroad plays a "'significant supervisory role' as to the injured person's work, the requisite employment relationship exists."[40] On the other hand, if the contact takes the form of the mere "passing of information" and "the accommodation that is obviously required in a large and necessarily coordinated operation," and is not imbued with a "supervisory character," an employment relationship does not exist under FELA.[41] Both theories turn on whether the railroad actually controlled *or had the right to control* the plaintiff's performance of his job.[42]

The summary judgment record here shows that Dozier's and Alexander's nominal employer, LDRR and the movant, GRSI are both wholly-owned subsidiaries of non-party Genesee

---

[36] The lenient summary judgment standard for a FELA negligence claim—i.e. that "a judgment as a matter of law against the plaintiff ... is appropriate 'only when there is a complete absence of probative facts' supporting the plaintiff's position'"—does not apply to the question of whether a defendant is a FELA employer. *Wheeler v. Norfolk S. Ry. Co.*, No. CV 20-1021, 2020 WL 5909528 (E.D. La. Oct. 6, 2020), aff'd, 6 F.4th 626 (5th Cir. 2021).
[37] *See McBride*, 564 U.S. at 691 ("Railroads are liable only to their employees, and only for injuries sustained in the course of employment.").
[38] *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 323 (1974).
[39] *Id.*
[40] *Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322, 1324 (5th Cir. 1985).
[41] *Kelley*, 419 U.S. at 330 (citing *Del Vecchio v. Pennsylvania R. Co.*, 233 F.2d 2, 5 (3d Cir. 1956)).
[42] *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 198-99 (8th Cir. 1981) (citing *Kelley*, 419 U.S. at 322-26).

& Wyoming, Inc.[43] GRSI and LDRR entered into an administrative services agreement under which GRSI provides "everything from legal to HR payroll and employee services, IT, finance and accounting, billing and receivables."[44] The record also shows that GRSI provided safety training to LDRR employees (including Plaintiffs) and required LDRR employees to undergo safety training and certification. The record further shows that GRSI employees oversaw LDRR's operations and visited LDRR's facilities several times a year. Standing alone, this evidence does not show that GRSI's relationship with LDRR is sufficiently imbued with a "supervisory character" to trigger the dual servant or subservant theories with respect to Dozier and Alexander. Plaintiffs, however, point to the additional evidence of a supervisory relationship between GRSI and LDRR:

- Plaintiffs' direct supervisors, Dustin Faulk and Marvin Wingfield reported to GRSI's vice president of transportation, William Keough, who had "complete authority to direct Faulk on what to do in LDRR's day-to-day operations;"[45]

- Given that Faulk was Plaintiffs' supervisor, Plaintiffs were in the "reporting chain" with Keough, and any directives by Keough would necessarily impact Plaintiffs' work;"[46]

- Keough had the authority to discipline and ultimately terminate Faulk's employment;[47]

- Keough also evaluated Faulk's job performance and had a role in determining Faulk's merit bonus at the end of the year;[48]

- Keough explained his role as having "oversight of all the operation of those 12 or whatever number of railroads [including LDRRI] [he] was supervising at that point in time; and that would include aspects including operation, safety, finance, customer service;"[49]

---

[43] ECF No. 77-1 at 2 (citing ECF No. 4).
[44] Id. (citing Keough's Rule 36(b) deposition transcript).
[45] ECF No. 84 at 4 (citing ECF No. 43-3, Keough Deposition Transcript at 82, 83).
[46] Id.
[47] ECF No. 43-3 at 83-86.
[48] Id.
[49] Id. at 36-37.

9

- Plaintiffs also point to Keough's testimony in which he agreed that, ultimately, the "buck stopp[ed]" with him as far as supervising Faulk and Wingfield;[50]

This evidence, together with GRSI's role in overseeing the operations of LDRR, creates a genuine issue of material fact as to whether LDRR was a servant of GRSI and, in turn, whether Plaintiffs were subservants given Keough's responsibilities and authority. Accordingly, the Court denies GRSI's Motion for Summary Judgment with respect to Plaintiffs' employment status.

## V.
### CONCLUSION

For the reasons stated above, the Court DENIES (1) the Motion for Summary Judgment filed by defendants GRSI and LDRR [ECF No. 75]; and (2) the Motion for Summary Judgment filed by GRSI on whether it is a FELA employer [ECF. No. 77].

THUS DONE in Chambers on this 14th day of January, 2026.

                                                ROBERT R. SUMMERHAYS
                                                UNITED STATES DISTRICT JUDGE

---

[50] *Id.* at 83,85.